## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BRUCE M. SKOORKA,

        Plaintiff,

v.

KEAN UNIVERSITY et al.,

        Defendants.

Civ. No. 17-5484 (KM) (MAH)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

*Pro se* plaintiff Dr. Bruce M. Skoorka brings this action, one of several asserting claims under Title VII of the Civil Rights Act against two groups of defendants. The first group (referred to as the "Kean Defendants") consists of Kean University, the Board of Trustees of Kean University (together, "Kean"), and the State of New Jersey. The second group (referred to as the "Union Defendants") consists of the Kean Federation of Teachers, the Council of New Jersey State Locals ("CNJSL"), and the American Federation of Teachers. Now before this Court is the motion of the Kean Defendants to partially dismiss the complaint and the motion of the Union Defendants to dismiss all claims. For the reasons set forth in this Opinion, the motions are granted in part and denied in part.

### I.    Background[1]

Dr. Skoorka has been a professor at Kean University since 1996. (EEOC Charge ¶ 1). Around 2000, he was granted tenure. (*Id.*). Dr. Skoorka is a

---

[1]    The Complaint incorporates and explicitly relies on two EEOC Charges filed in 2016. I may consider them without converting the motions to dismiss into one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("'[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *accord In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

member of the Jewish faith, a fact relevant to his claims. (EEOC Charge ¶ 2). Dr. Skoorka asserts that he engaged in protected Title VII activities during his time at Kean University. (*Id.*). In particular, he has filed numerous EEOC charges, discrimination claims, and internal complaints against the defendants. (*Id.* ¶¶ 1–10). Before reviewing the facts of this action, I will survey the history of Dr. Skoorka's claims.[2]

---

For purposes of this Opinion, all facts alleged in the EEOC Charges and Complaint are presumed to be true. For ease of reference, those documents will be abbreviated as follows:

| "Cplt." | Complaint in this 2017 Action. | = | [DE 1] |
| "EEOC Charge" | The July 20, 2016 EEOC Charge | = | [Cplt. pp. 8–13] |

[2]     As discussed *infra*, Dr. Skoorka's actions against the defendants have oftentimes overlapped. The actions string together an alleged series of discriminatory or retaliatory acts over the last two decades. Two of these actions have been consolidated; it may be necessary to consolidate others. For now, I have provided this list of the most important prior opinions related to Dr. Skoorka's many claims. For ease of reference, I have designated them as "Opinion A," "Opinion B," etc.

From the 2001 New Jersey State Court Action:

Opinion A     *Skoorka v. Kean Univ.*, No. A-5618-08T2, 2011 WL 3667664 (N.J. Super. Ct. App. Div. Aug. 23, 2011).

Opinion B     *Skoorka v. Kean Univ.*, No. A-1654-05T5, 2007 WL 2460160 (N.J. Super. Ct. App. Div. Aug. 30, 2007), *certif. denied*, 194 N.J. 269, *cert. denied*, 555 U.S. 817 (2008).

From 2009 DNJ and 2014 S.D.N.Y. Actions:

Opinion C     *Skoorka v. Kean Univ.*, No. 09-cv-3428 KM MAH, 2015 WL 3533878 (D.N.J. June 2, 2015).

Opinion D     *Skoorka v. Kean Univ.*, No. 14-cv-4561 KM MAH, DE 39; *Skoorka v. Kean Univ.*, No. 09-cv-3428 KM MAH, DE 137.

Opinion E     *Skoorka v. Kean Univ.*, No. 09-cv-3428, 2017 WL 2838459, at *1 (D.N.J. June 30, 2017).

From the 2016 Action:

Opinion F     *Skoorka v. Kean Univ.*, No. 2:16-CV-3842-KM-MAH, 2018 WL 3122331 (D.N.J. June 26, 2018).

Opinion G     *Skoorka v. Kean Univ.*, No. 16-cv-3842 (KM), 2017 WL 6539449 (D.N.J. Dec. 21, 2017).

### a. Procedural History
#### i. 2001 New Jersey state court action

In November 2001, Dr. Skoorka brought a state court action against Kean, his union, and several individual defendants (the "2001 State Court Action". (Opinion A at *3 (affirming trial court's dismissal of the amended complaint after a jury trial); *see also* Opinion B (affirming in part and reversing in part the trial court's pretrial discovery orders, summary judgment opinion, and order regarding the plaintiff's motion to amend).)

In the 2001 State Court Action, Dr. Skoorka alleged retaliation and discrimination on the basis of religion. (Opinion A at *3). He also alleged retaliation for reporting discrimination and other allegedly illegal conduct. (*Id.*). He pursued claims under the First Amendment, Equal Protection Clause, the Conscientious Employee Protection Act ("CEPA"), the New Jersey Law Against Discrimination ("NJLAD"), Title VII of the Civil Rights Act ("Title VII"), and Section 1983. (*Id.*).

The suit took some ten years, two jury trials, and at least two written opinions from the Appellate Division to fully resolve itself—although the Appellate Division observed that Dr. Skoorka's case was "always weak." (*Id.* at *1). In the end, Dr. Skoorka was unsuccessful on all counts. (*Id.* at *11). The Appellate Division affirmed the trial court's rulings, as well as the jury's verdict, in August 2011. (*Id.*).

#### ii. 2006 EEOC charge and 2007 federal court action, refiled as 2009 action, subsequently consolidated with 2014 action

On July 24, 2006, while his New Jersey state court suit was pending, Dr. Skoorka filed a charge of discrimination with the EEOC. (*See* No. 09-cv-3428, DE 123-5, p. 10–21.)

On April 6, 2007, Dr. Skoorka brought an action in this federal court (the "2007 Action"). (*See* No. 07–cv–1629, DE 1.) On March 20, 2009, the parties entered into a consent order wherein the judge dismissed Dr. Skoorka's case

and granted him leave to refile his complaint within 120 days. (*See* No. 07–cv–1629, DE 32.) The order stipulated that if Dr. Skoorka refiled his complaint, the date of filing would relate back to the original filing date of April 6, 2007. (*Id.*)

Near the end of that 120-day period, Dr. Skoorka refiled his complaint (the "2009 Action"). (Opinion C). The 2009 Action attempted to relitigate some of the matters on which Skoorka had failed to prevail in the New Jersey state court action. (Opinion C at *3). The 2009 complaint also incorporated the 2007 complaint's allegations, with the addition of a few incidents that had allegedly occurred in the interim. (*Id.*).

In a June 2, 2015 opinion, this Court, addressing the 2009 Action, granted summary judgment for defendants on the CEPA, NJLAD, and Title VII discrimination claims. (Opinion C). The Union Defendants were granted summary judgment in their favor. (Opinion C at *24). I surveyed some 15 allegations, many of which had been updated since the filing of the 2009 complaint. (Opinion C). Twelve of them, I found, were unsupported by any evidence at all. (*Id.*). Three, I found, had some minimal record support, and those three I discussed in light of the governing summary judgment standard. (*Id.*). The only claim to survive summary judgment was Dr. Skoorka's Title VII claim of retaliation, asserted against Kean. (*Id.*).

In a February 25, 2016 opinion, this Court consolidated the 2009 Action with a later action, filed on June 27, 2014 in the U.S. District Court for the Southern District of New York but transferred here. (the "2014 Action", 14cv4561; *see* Opinion D). *See also Skoorka v. Kean Univ.*, No. 14-cv-4561 KM MAH, 2015 WL 3561610, at *1 (D.N.J. June 5, 2015) (denying plaintiff's motion for leave to appeal the interlocutory transfer order and finding that the transfer was proper). The allegations in the 2014 Action virtually duplicated those in the 2009 Action. Dr. Skoorka frankly acknowledged that he was forum-shopping, filing the same action again in a different federal court because "to date, it has not been possible for Plaintiff to obtain a fair hearing of his claims

against Defendants in New Jersey." (*See* No. 14-cv-4561, DE 11 at 21.) Because the 2009 and 2014 Actions appeared to be essentially identical, I consolidated them. (Opinion D). After doing so, however, I granted Dr. Skoorka leave to file a supplemental and amended complaint alleging that there were facts in the 2014 Action that post-dated (and therefore did not duplicate) the 2009 Action. (*Id.*). The Court further instructed that the supplemental and amended complaint should not rehash claims already disposed of on summary judgment opinion in the 2009 action. (*Id.*). On April 22, 2016, Dr. Skoorka filed the "Supplemental Amended Complaint," No. 09-cv-3428, DE 145. Despite the Court's instructions, much duplication nevertheless remained.

In a June 30, 2017 opinion, this Court, considering the supplemental amended complaint in the consolidated 2009 and 2014 Actions, granted a motion to dismiss, with one exception: supplemental allegations of retaliatory deprivation of office equipment and supplies would be permitted to go forward in the context of the Title VII retaliation claim that had already survived summary judgment in the 2009 Action. (Opinion E). The Court also permitted limited additional discovery on the subject of the equipment and supplies. (Opinion E at *7). As of the date of this opinion, discovery in the consolidated 2009 and 2014 Actions has not yet closed.

### iii. 2015 EEOC charge and 2016 federal court action

Dr. Skoorka filed a charge of discrimination with the EEOC on February 16, 2015. After several amendments, Dr. Skoorka received a right to sue letter, and filed a second complaint in the Southern District of New York on June 2, 2016 (the "2016 Action"). (*See* No. 16-cv-3842, DE 1 ("2016 Action Complaint").) Venue of that case was transferred to this District on June 28, 2016. (*See* No. 16-cv-3842, DE 3.)

In a June 26, 2018 opinion, this Court, considering the 2016 Action, granted motions to dismiss with the exception of a Title VII retaliation claim. (Opinion F at *3). The complaint in that 2016 SDNY Action, like the 2014 SDNY Action, seemed to raise or refer to allegations already disposed of in the Court's

summary judgment opinion in the 2009 Action, but it also asserted more recent factual allegations. (*Id.*). The claims were for the most part dismissed. (*Id.* at *15). The surviving claims are Title VII retaliation, as against the Kean Defendants for transferring him to a nonteaching position, and as against the Union Defendants for failure to press grievances.

The opinion concluded with the following note:

> The Court is not unaware that Dr. Skoorka continues to reassert similar allegations in new actions, nor can it be blind to a history in which very few of his prior allegations were found to have even minimal evidentiary support. A fact finder may also be skeptical of a litigant's endless daisy chaining of "retaliation" claims, each time claiming that workplace grievances occurred in retaliation for prior, unsuccessful claims. That determination, however, is for another day.

(Opinion F at *15). (*See also* Opinion G at *6 (*Skoorka v. Kean Univ.*, No. CV 16-3842 (KM), 2017 WL 6539449 (D.N.J. Dec. 21, 2017) (denying a motion for an injunction and sanctions against plaintiff under Fed. R. Civ. P. 11, but warning plaintiff that "[t]here comes a point beyond which a litigant cannot simply daisy-chain claims *ad infinitum*, each time claiming that the defendant is 'retaliating' for the unsuccessful claim immediately preceding")).

### iv. The 2016 EEOC charge and this 2017 federal court action

On July 20, 2016, Dr. Skoorka again filed charges with the EEOC. (Cplt. p. 6). The EEOC issued a Notice of Right to Sue letter on January 23 and January 31, 2017. (*Id.* p. 6).

On April 10, 2017, Dr. Skoorka filed the Complaint in this action (the "2017 Action") in yet a fourth[3] forum: the U.S. District Court for the Eastern District of New York, where it was assigned to Judge LaShann DeArcy Hall. On July 21, 2017, Judge Hall transferred the case to the District of New Jersey, where it was assigned to me. (DE 4) Post-transfer, on August 23, 2017, Dr.

---

[3]     Or possibly fifth. Reference is made in the briefing to an action filed in state court in New York.

Skoorka filed an application for reconsideration of the transfer order (as he had done, unsuccessfully, with respect to the 2014 SDNY action). (DE 10).

On September 29, 2017, Magistrate Judge Michael A. Hammer filed an order (DE 20) staying this case pending the outcome of dispositive motions in the 2016 Action. On October 24, 2017, Dr. Skoorka filed a motion for reconsideration regarding the order to stay (DE 23), which I denied. (DE 26). On July 10, 2018, Magistrate Judge Hammer lifted the stay. (DE 28).

On July 31, 2018, the Kean Defendants filed the motion to dismiss (DE 29) that is now before this Court. The Kean Defendants move the Court to dismiss Dr. Skoorka's religious discrimination claim, discussed *infra*, and also his claims based on failure to promote and scheduling interference with Dr. Skoorka's secondary employment at NYU. (DE 29). On August 1, 2018, the Union Defendants filed a motion, also now before this Court, to dismiss the Complaint in its entirety. (DE 30). On October 22, 2018, Dr. Skoorka filed an opposition to both motions. (DE 37). On October 20, 2018, the Kean Defendants filed their reply to Dr. Skoorka's opposition. (DE 35).[4] On October 23, 2018, the Union Defendants submitted their reply. (DE 36).

### b. Factual Allegations of this Complaint

With some exceptions, the factual allegations raised in Dr. Skoorka's current 2017 Complaint and the underlying EEOC charges are updates of his 2016 Action—*i.e.,* they are similar in nature but are alleged to begin after the factual allegations of the 2016 Action end.[5] I note generally that the Complaint and EEOC Charges often fail to specify the dates on which alleged events occurred. (*See e.g.,* EEOC Charge ¶ 19) ("Kean interfered with my religious

---

[4] The filings are out of chronological order. On October 19, 2018, Dr. Skoorka apparently did not file his responding brief, but e-mailed it to the defendants, who filed their reply on October 20, 2018. Dr. Skoorka filed his already-served brief thereafter, on October 22, 2018. (DE 36).

[5] To provide context to his fresh allegations, nn. 7–10 and 12–14, *infra,* relate them to Dr. Skoorka's corresponding allegations in the 2016 Action.

observance by . . . attempting to deliver mail to me, late Friday afternoon, and by certified mail requiring signature confirming receipt on Yom Kippur and the Sabbath."). I will assume, however, that the claims in the complaint correspond to those in the EEOC charge, and that Dr. Skoorka therefore intends for this 2017 Action to cover the period from the end of September 2015 through July 2016. (*See id.* ¶ 14) (claiming in the EEOC Charge that "examples of unlawful conduct against me during the past *300* days . . . [are] set forth below") (emphasis added).)[6]

### i. Teaching duties[7]

Dr. Skoorka alleges that Kean prevented him from teaching during the Spring 2016 and Fall 2016 semesters. (EEOC Charge ¶¶ 21, 26). Kean, he

---

[6]     In connection with these motions to dismiss, the parties have submitted documents extrinsic to the complaint. Many cannot be considered without converting this opinion into one on summary judgment. I will not do that at this time. However, I consider Dr. Skoorka's previous EEOC Charges and complaints, which are cited in the Complaint and relate to Dr. Skoorka's alleged protected activities. Those actions may be considered without converting the Rule 12(b)(6) motion into one for summary judgment. *See Schmidt*, 770 F.3d at 249.

In his briefing, Dr. Skoorka asks this Court to supplement any gaps or generalities in this Complaint with a complaint he filed in a 2017 New York Supreme Court action. (*See e.g.*, DE 37 pp. 2, 5, 10). I see no basis in the federal rules or accepted practice to supplement a complaint's allegations with those from a state court action. And, just to be clear, Dr. Skoorka cannot be alleging that, during the period of September 2015 to July 2016, the defendants retaliated against him for a complaint that would not be filed until a year later, in 2017.

Dr. Skoorka and the Union Defendants ask me to consider the Collective Bargaining Agreement in this Opinion. Dr. Skoorka attaches an incomplete copy of the CBA as an exhibit to his briefing, (DE 37-1 pp. 98–103); the Union Defendants, provide the Court with a full copy, (DE 30-1). While the CBA is integral to the Complaint, and I will consider it, I will not engage in any contract interpretation that would implicate disputed issues of fact.

[7]     In the 2016 Action, Dr. Skoorka alleged that Kean University stripped him of his teaching duties and gave him a non-teaching assignment for the Spring 2015 Semester. (Opinion F at *4; EEOC Charge ¶ 12). At some point, he completed his non-teaching assignment and demanded that Kean restore his teaching duties for the Fall 2015 semester. (Opinion F at *4). Kean did not do so. (*Id.*). Dr. Skoorka also alleged that Kean required him to submit weekly timesheets and remain on campus each weekday from 9am to 5pm. (*Id.*). The allegations in this 2017 action seem to be an update of those.

says, requires him to "sign in" and "sign out" of work every week day. As a result, he is required to sit in his office from 9am to 5pm. (*Id.* ¶¶ 15, 21, 26).

### ii. NYU teaching position[8]

Dr. Skoorka makes the sweeping allegation that the defendants have interfered with his secondary employment at NYU. (EEOC Charge ¶ 31).

### iii. Disciplinary actions[9]

Kean demanded that Dr. Skoorka attend a disciplinary interview. On or about September 24, 2015, Dr. Skoorka sent Kean an e-mail requesting that Kean provide "certain information prior to any 'disciplinary hearing.'" (EEOC Charge ¶ 16). On or about October 8, 2015, Dr. Skoorka sent Kean another e-mail with a similar request. (*Id.*). The information is not specified. Kean did not provide Dr. Skoorka with the information he requested, and allegedly denied Dr. Skoorka representation. (*Id.*).

On September 30, 2015, and October 1, 6, 14, 20, and 23, 2015, Kean allegedly sent Dr. Skoorka e-mails, memos, and letters raising false accusations and criticisms against him. (EEOC Charge ¶ 17). Dr. Skoorka does not allege what accusations or criticisms were raised. (*Id.*). Broadly, he avers that "Kean has been stuffing my personnel file with these false and defamatory materials to coerce my resignation, set me up for adverse action and cause me to suffer damagers including damages to my reputation." (*Id.*). In October 2015, Kean issued an "Official Written Reprimand" to Dr. Skoorka and placed it in his file. (*Id.* ¶ 21). Dr. Skoorka alleges that the reprimand was baseless. (*Id.*).

---

[8] In the 2016 Action, Dr. Skoorka alleged, with at least some specificity, how the defendants' actions interfered with his ability to teach at New York University. (Opinion F at *4–5). In this 2017 Action, his allegations, though similar to the 2016 NYU allegations, are conclusory and nonspecific.

[9] In the 2016 Action, Dr. Skoorka alleged that Kean demanded to meet with him for a "Disciplinary Interview." (Opinion F at *6). Dr. Skoorka also alleged that Kean attempted to have Dr. Skoorka attend the disciplinary meeting without representation. (*Id.*). The allegations of this 2017 Action seem to be related to those.

On September 30 and October 14, 2015, Kean forced Dr. Skoorka to attend "frivolous meetings with the administration, during which [he] was subject to discrimination, harassment and retaliations." (EEOC Charge ¶ 18). Dr. Skoorka alleges that similar meetings occurred at other unspecified times. (*Id.*). He does not allege what specifically occurred during any of these meetings. (*Id.*).

In December 2015, Kean issued "Tenure Charges" against Dr. Skoorka. (EEOC Charge ¶ 22). Dr. Skoorka does not allege what specifically the charges asserted, but broadly characterizes them as "false, discriminatory and retaliatory." (*Id.*). Dr. Skoorka also avers that the charges did not allege any actual tenure violations. (*Id.*). This statement is conclusory and based on facts and agreements not before me. Dr. Skoorka also argues that his collective bargaining agreement does not permit Kean's actions. (*Id.*).

Dr. Skoorka's response to the Tenure Charges was due on February 17, 2016. (*Id.* ¶ 23). Dr. Skoorka does not allege that he filed a response. (EEOC Charge).

On January 26, 2016, Kean sent a letter to Dr. Skoorka implementing a three-day unpaid suspension for the period of February 3–5, 2016. (*Id.* ¶ 25).

In July 2016, Kean sent Dr. Skoorka another set of Tenure Charges, which raise the same accusations and criticisms contained in the December 2015 Tenure Charges. (*Id.* ¶ 28). Through those charges, Kean seeks to suspend Dr. Skoorka for ten days and, allegedly, to coerce Dr. Skoorka's resignation "and/or set [him] up for further adverse employment action." (*Id.*).

### iv. Religious holidays/sabbath[10]

Dr. Skoorka alleges that, during the fall of 2015, Kean sought to schedule a meeting with Dr. Skoorka on Rosh Hashanah and the evening of Yom Kippur. (EEOC Charge ¶ 19). Also on Yom Kippur, Kean sent mail to Dr. Skoorka that would have required a signature to confirm receipt. (*Id.*). Dr.

---

[10]    In the 2016 Action, Dr. Skoorka alleged that the defendants scheduled meetings and sent correspondence to Dr. Skoorka on or near Jewish holidays. (Opinion F at *6).

Skoorka also alleges that Kean attempted to deliver mail late on Friday, or mail that would have required a signature confirming receipt on the Sabbath. (*Id.*).[11] Dr. Skoorka does not allege the specific dates on which these Friday or Sabbath delivery "attempts" occurred, or even allege how many times these events occurred. He does not state that he actually did receive these letters or sign for them. After these events occurred, but at some unidentified time, an unidentified Kean representative allegedly stated to some unidentified person that Dr. Skoorka had failed to attend meetings and accept mail. (*Id.*).

### v. Failure to promote[12]

Dr. Skoorka alleges that, at some unspecified time, the position of Department Coordinator became available in his department. (EEOC Charge ¶ 27). The incumbent Coordinator, who was the only other tenured faculty member in the department, became ill. (*Id.*). At that point, Dr. Skoorka had been "on the job" for more than 20 years and was the most senior professor remaining in the department. (*Id.*). He does not allege that he applied for the position, but rather asserts that under "seniority" and his Collective Bargaining Agreement ("CBA") he was "next in line" for the job. (*Id.*). Kean filled the position with a non-tenured adjunct faculty member or lecturer. (*Id.*).

### vi. Union defendants' failure to press grievances[13]

Dr. Skoorka broadly avers that he "opposed, objected to and complained to the Union," which failed to take appropriate action and instead "endorsed, condoned, supported, aided and abetted" all and any of the "discrimination, harassment and retaliation" alleged in the Complaint. (EEOC Charge ¶ 29).

---

[11]    I take judicial notice that in 2015 (AM 5776), Yom Kippur ran from the evening of Tuesday, September 22 to the evening of Wednesday, September 23. The sabbath, in Jewish tradition, runs from sunset on Friday to sunset on Saturday.

[12]    In the 2016 Action, Dr. Skoorka alleged that Kean failed to promote him from Assistant Professor to Associate Professor, and instead promoted or hired less-qualified persons. (Opinion F at *6).

[13]    In the 2016 Action, Dr. Skoorka alleged a number of specific grievances that the Union should have filed on his behalf. (Opinion F *4–7). Here, his allegation is more sweeping and nonspecific.

### vii. Preferential treatment[14]

Dr. Skoorka asserts, without reference to any specific factual allegations, that the defendants granted preferential treatment to employees outside of his protected class and did not subject his peers to the adverse actions he was subjected to. (EEOC Charge ¶ 30).

### c. Legal Claims

Dr. Skoorka brings his claims against the defendants under Title VII. One component of that claim alleges discrimination and harassment on the basis of religion; a second alleges retaliation for exercise of Title VII rights. His alleged damages include lost wages, consequential damages, compensatory damages, including damages for emotional and mental distress and damage to his good will and reputation, punitive damages, "other damages," litigation costs and reasonable attorneys' fees, "any and all other damages provided by the applicable statutes," and any other damages that may be "just and proper." (Cplt. p. 6).

## II. Discussion

### a. Legal standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the

---

[14]    In the 2016 Action, Dr. Skoorka alleged some specific incidents in which he and non-Jewish faculty members were subjected to disparate treatment. (Opinion F at *3). Not so here.

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Moreover, where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### b. Title VII Retaliation

Dr. Skoorka brings a Title VII claim for retaliation.[15] To establish a prima facie case of retaliation, the plaintiff must establish that (1) he[16] engaged in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). Dr. Skoorka's complaints to superiors about discriminatory treatment, lawsuits, and EEOC filings qualify as activities protected by Title VII. *See id.* at 343.

### i. Adverse employment action

To support a Title VII retaliation claim, an "adverse employment action" must rise to a defined level of severity:

> [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.
> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.

---

[15]   The Union Defendants argue that Dr. Skoorka's Title VII retaliation claims must be wholly dismissed because the 2017 Action fails to allege any new facts and is an example of the sort of "daisy-chaining" this court has already warned against. (DE 30-3 p. 11) (citing Opinion G at *6). It is true that the behavior alleged is repetitive of prior actions. However, Dr. Skoorka avers that the facts alleged in this Complaint took place in the 300 days before he filed his July 2016 EEOC Charge. In effect, then, this complaint updates the allegations of the prior complaint. That result would more typically be accomplished by filing a supplemental pleading. Dr. Skoorka chose instead to file a separate action in another district, which was transferred here. I will approach his retaliation claim afresh under Fed. R. Civ. P. 12(b)(6), leaving other issues for summary judgment or other motion practice.

[16]   Because the plaintiff happens to be male, I use the masculine pronoun, even when referring to a generic plaintiff.

14

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (internal quotations and citation omitted).

Dr. Skoorka has alleged that Kean removed him from his teaching position, initiated disciplinary actions against him, and did not promote him. As I have found before, transfer from a teaching to a nonteaching position[17] is severe enough to qualify as a potential retaliatory action. (Opinion F at *10). Likewise, disciplinary actions, assuming they are unwarranted, may be severe enough to qualify as a potential retaliatory action.

Dr. Skoorka's allegation of retaliatory failure to promote, however, requires more discussion. Dr. Skoorka alleges that Kean retaliated against him by not promoting him to Department Coordinator. (EEOC Charge ¶ 27). As in his prior failure-to-promote claims, Dr. Skoorka does not allege that he actually applied for a position. (*Id.*). (*See e.g.,* Opinion F at *13) (holding that Dr. Skoorka failed to establish discrimination based on Kean's failure to promote him from Assistant to Associate Professor when his only factual allegation in support was that he had a "standing" application for the position). Here, however, Dr. Skoorka alleges that Kean was *required* to promote him to the position of Department Coordinator, unasked, based on seniority and the requirements of his CBA. (EEOC Charge ¶ 27).

The allegation raises two concerns. First, absent some established policy or contract, a person's seniority status does not automatically require that person's employer to promote him to a position he did not apply for.[18] Second,

---

[17]    As in the 2016 complaint, Dr. Skoorka complains that the result is that he is required to sign in and out of work and remain at his desk from 9am to 5pm. (EEOC Charge ¶¶ 15, 21, 26; *see* Opinion F at *4).

[18]    In some situations, a plaintiff may bring a failure to promote claim, at least based on discrimination, without having filed a formal application for that position. Dr. Skoorka, however, has not alleged any of those situations. First, Dr. Skoorka has not asserted that Kean's "promotional system did not involve a formal application process," or that his previous legitimate "attempts to apply for a promotion have been rebuffed." *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 331-32 (D.N.J. 1995), *on reconsideration in part* (D.N.J. 1995) (considering a failure to promote, discrimination claim). Further, he has not alleged that he "did everything reasonably possible to make

15

Dr. Skoorka generally invokes the CBA, but does not point to a particular provision in his CBA that requires his automatic promotion to Department Coordinator. As it stands, the Complaint fails to state a claim for retaliation based on failure to promote.

Several of Dr. Skoorka's other factual allegations also fail to plausibly suggest a material adverse action. One alleged form of retaliation took the form of "frivolous meetings." (EEOC Charge ¶ 18). Its triviality aside, the allegation is conclusory and nonspecific, without supporting facts. (*Id.*). In a prior opinion, I rejected the notion that Kean was required to schedule around Dr. Skoorka's supplemental NYU employment, but accepted that Kean might nevertheless have used its scheduling decisions in a retaliatory fashion. Here, however, Dr. Skoorka alleges only broadly and nonspecifically that the defendants interfered with his teaching position at NYU. (*Id.* ¶ 31). He provides no dates, details, or indeed any specific allegation as to what interference occurred in the relevant period. (*Id.*). Dr. Skoorka also broadly alleges, without any specific facts in support, that the defendants unlawfully withheld wages and benefits.[19] (Cplt. p. 1). These assertions all fail as allegations of retaliatory acts by Kean.

---

known to [defendants his] interest in applying for [the Department Coordinator position]." *EEOC v. Metal Service Co.*, 892 F.2d 341, 349 (3d Cir.1990) (considering a failure to promote, discrimination claim). In fact, Dr. Skoorka has not alleged that he did *anything* to make known to Kean that he was interested in the position of Department Coordinator. Nor has he alleged that he was deterred from applying for the Department Coordinator job because of Kean's discriminatory practices. *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 907 F.2d 1408, 1415 (3d Cir. 1990) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977) (considering a failure to promote, discrimination claim). Finally, Dr. Skoorka has not alleged that he had a genuine interest in the position but had a reasonable belief that a formal application for the position would have been futile. *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 907 F.2d 1408, 1415 (3d Cir. 1990) (citing *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972) (considering a failure to promote, discrimination claim))

[19]     This may be a cryptic reference to Dr. Skoorka's suspension, discussed *supra.* In addition, Dr. Skoorka alleges that Kean interfered with his religious observances; I address those allegations at Section II.c, *infra*.

### ii. Causal connection

Dr. Skoorka has pled sufficient facts that could support an inference of a causal connection between his complaints of discrimination and the alleged retaliatory actions (essentially, curtailed teaching duties and disciplinary actions).

> To establish causation at the prima facie stage, a plaintiff must introduce evidence about the "scope and nature of conduct and circumstances that could support the inference" of a causal connection between the protected activity and adverse action. At this stage, "a plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between [the] protected activity and the adverse action taken." For example, very close temporal proximity between the adverse action and the protected activity may be "unusually suggestive" of a causal connection. A plaintiff can also rely on evidence such as "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."

*Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 95-96 (3d Cir. 2016) (internal citations omitted).

In the 2016 Action, I found that Dr. Skoorka had alleged an inference of a causal connection. There, Dr. Skoorka presented factual allegations that Kean articulated inconsistent reasons for giving him a nonteaching assignment. In this 2017 Action, however, Dr. Skoorka does not allege such inconsistencies. There are other means, however, for a plaintiff to plead an inference of causation, such as temporal proximity and intervening signs of antagonism.

For example, Dr. Skoorka filed EEOC Charges in February of 2015. *See* No. 16-cv-3842, DE 1 ¶ 14.[20] He then filed amendments and supplements to those charges on March 6, 2015, September 30, 2015, and January 19, 2016.

---

[20]     To demonstrate that Dr. Skoorka engaged in protected activities, the EEOC Charge attached to this Complaint incorporates by reference the complaint of the 2016 Action. (EEOC Charge ¶ 8). I consider the history of that 2016 Action, including its related EEOC Charges, to lay out the timeline of Dr. Skoorka's activities in relation to the alleged retaliations.

*Id.* In that same period, Skoorka alleges, Kean took action against him. First, from September 30, 2015 through October 2015, Kean sent Dr. Skoorka an official reprimand, and also allegedly sent e-mails, memos, and letters raising false accusations against him. (EEOC ¶¶ 17, 21). By December of that year, Kean had filed its first Tenure Charges. (*Id.* ¶ 22). On January 26, 2016, Kean implemented a three-day unpaid suspension against Dr. Skoorka. (EEOC Charge ¶ 25).

As another example, Dr. Skoorka filed the 2016 Action in June 2016. *See* No. 16-cv-3842, DE 1. The next month, Kean sent Dr. Skoorka the second set of tenure charges. (EEOC Charge ¶ 28). Those charges expose Dr. Skoorka to a potential suspension of ten days. (*Id.* ¶ 28).

In short, during the relevant period of this 2017 Complaint, Dr. Skoorka engaged in the above-described series of protected activities. Contemporaneously, Kean continued to curtail Dr. Skoorka's teaching assignments and bring disciplinary charges. (*Id.* ¶ 21, 26).

To be sure, alleging is not proving, and the picture painted here is far from clear. Dr. Skoorka's filing of EEOC charges and lawsuits, for example, is fairly constant. Any act taken by Kean in the last several years would probably have occurred in temporal proximity to one or another of them. Still, under the motion to dismiss standard, Dr. Skoorka's allegations sufficiently demonstrate proximity and intervening antagonism to support an inference of causation. Dr. Skoorka's retaliation claim against Kean for disciplinary actions and curtailment of teaching duties survives these motions to dismiss.

### iii. Union Defendants

Under a Title VII theory, Dr. Skoorka alleges that the Union Defendants should have, but did not, act on his behalf to remedy Kean's unfair employment practices. As I have stated before, there is authority that a union may be liable if it makes a deliberate choice not to process an employee's grievance on a basis prohibited by Title VII. *Barrentine v. New Jersey Transit,*

44 F. Supp. 3d 530, 540 n.8 (D.N.J. 2014) (McNulty, J., in dicta); Opinion F at
*11).

Here, the only relevant factual allegation is that the Union "failed to take
appropriate remedial action and measures to alleviate the unlawful
employment practices." (EEOC Charge ¶ 29). Dr. Skoorka does not assert what
specific actions the Union was obligated to take. Instead, he broadly alleges
that the Union had a generalized duty to right his wrongs—*sua sponte,*
apparently.

The allegations lack specificity as to which of Dr. Skoorka's complaints
were brought to the union's attention, which would properly have been brought
as grievances, the circumstances of any "deliberate" decision by the union not
to pursue them, or facts suggesting a forbidden Title VII basis for such a
refusal. At any rate, the Union argues persuasively that tenure charges are not
subject to the grievance procedure (DE 30-3 pp. 12–15 (citing both the CBA
and New Jersey tenure statute)), and that failure to promote or transfer to a
non-teaching position are not subject to the grievance procedure, either (*id.* pp.
15–17). The Union also points to authority that it cannot pursue a
discrimination grievance in binding arbitration. (DE 30-3 pp. 15–20).

An analogous claim in the 2016 Action survived a motion to dismiss.
There, however, Dr. Skoorka at least alleged with some minimal specificity that
the Union had done something to obstruct some particular grievance on an
identified occasion. [21] Here, he simply alleges generally that the Union failed to

---

[21]    Here is my discussion of the analogous allegations in the 2016 Action:

Assuming such a claim is legally viable, Dr. Skoorka has pled sufficient
facts stating that the union defendants chose not to press his grievances
against Kean. Dr. Skoorka has alleged that the union did not try to move
his hearing date earlier (to comply with a timeline allegedly set forth in the
collective bargaining agreement) and withdrew his grievance against Kean
(allegedly because he did not attend the originally scheduled hearing).

We are, of course, at the motion to dismiss stage with respect to these
particular allegations. Whether such allegations can be sustained in light
of the evidence, whether the union or the university had sufficient reason
for acting as they did, and so forth, cannot be decided here. As in the case

look out for his interests. That is not a sufficient allegation. The Union's motion to dismiss is therefore granted.

### c. Title VII Discrimination and Harassment

Dr. Skoorka claims that defendants discriminated against him because of his Jewish faith or ethnicity. (Cplt. p. 5). A prima facie case under Title VII, whether under a disparate treatment or a hostile work environment theory, requires two essential showings: (1) an adverse action by the employer and (2) an unlawful, discriminatory basis for that action. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *William Paterson Coll. of New Jersey*, 260 F.3d 265, 282 n.13 (3d Cir. 2001); *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 627 (D.N.J. 2014) (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453-54 (N.J. 1993)).

Dr. Skoorka alleges that Kean gave him a less desirable assignment (*i.e.*, a nonteaching position), an action which I will assume to be severe enough to constitute an adverse employment action. I will make the same presumption for his allegations that Kean wrongfully brought unfounded disciplinary actions against him. As noted above, Dr. Skoorka claims a number of other adverse employment actions as well.

All that being said, the claims fail to state facts giving rise to an inference that Kean's actions arose from hostility to Dr. Skoorka's Jewish faith or ethnic background. There are no surrounding circumstances, such as a history of slurs or biased comments, to suggest a religious basis for Kean's actions. Only one set of allegations in the Complaint even obliquely relates to Dr. Skoorka's membership in a protected religious class. Dr. Skoorka asserts vaguely that a Kean representative stated to an unspecified listener that Dr. Skoorka refused

---

of the earlier allegations in the 2009 action, they may or may not survive summary judgment. For now, however, the motion to dismiss is denied as to Dr. Skoorka's Title VII retaliation claim against the Kean and union defendants.

(Opinion F at *11).

20

to accept mail and attend meetings. (EEOC Charge ¶ 19). What lies behind such statements, says Dr. Skoorka is that Kean, at some unspecified time in some unspecified manner, Kean "interfered with [his] religious observances by '*seeking*'" a meeting with him on the religious holidays of Rosh Hashanah and Yom Kippur. (*Id.*) (emphasis added). Dr. Skoorka does not, however, allege that he requested to move the meetings, or even that the meetings the university "sought" in fact occurred on those days. (*Id.*). He also alleges that Kean "attempted" to deliver correspondence on Yom Kippur and days of sabbath observance. (*Id.*). Dr. Skoorka, however, does not allege that his holiday or sabbath observances were in fact interrupted by the arrival of mail or email in his mail boxes. (*Id.*). He also does not allege that the date of delivery prevented him from receiving the communications or opening them the following day. (*Id.*). Nor does he even allege plausibly that Kean controlled the date of delivery of, *e.g.*, U.S. mail. These incidents, as pled, are too attenuated and speculative to demonstrate adverse employment actions or harassment, and they fail to suggest an inference of religious-based discrimination. Dr. Skoorka's religious discrimination and harassment claims, now as in earlier complaints, are dismissed.

### III. Application for reconsideration of venue transfer

Dr. Skoorka has filed prior actions based on similar allegations in New Jersey State court, this District Court, the U.S. District Court for the Southern District of New York, and, apparently, New York state court. This action he filed in yet another forum, the U.S. District Court for the Eastern District of New York. The Eastern District (like the Southern District before it) transferred venue of the action to the District of New Jersey.

Dr. Skoorka has filed an application for reconsideration of the decision to transfer venue from the Eastern District of New York to the District of New Jersey pursuant to 28 U.S.C. § 1406(a) and 42 U.S.C. § 2000e-5(f)(3). That transfer order, of course, was Judge Hall's, not mine. For the sake of transparency, however, I cite Dr. Skoorka's underlying concern, which is that

he cannot obtain a fair resolution of his claims in the District of New Jersey in general, and before me in particular:

> Plaintiff cannot obtain an impartial trial in New Jersey . . . Plaintiff also respectfully objects to the assignment of the case to Judge McNulty in the District of New Jersey, as that Court has made various erroneous adverse rulings that will be subject of an omnibus appeal. Moreover, Plaintiff respectfully submits that his prior federal court filings in New York were *sua sponte* transferred to the District of New Jersey and immediately routed to Judge McNulty, who thereafter erroneously dismissed meritorious claims asserted by Plaintiff without any jury trial.

(DE 10, 4).

Such allegations of impartiality or bias are most appropriately addressed under the standards governing judicial recusal. "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455 (a). Further, "[the judge] shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455 (b). *See also Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994). Impartiality is evaluated from the point of view of a hypothetical reasonable member of the public. *See In re Kensington Int'l Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004) ("objective, reasonable lay person").

The "only *common* basis" for recusal, though not the exclusive one, would be a predisposition stemming from an extrajudicial source of information. *Liteky,* 510 U.S. at 551. I have no extrajudicial knowledge whatever pertaining to Dr. Skoorka, his case, or the people involved in the underlying events.

More rarely, a predisposition that is inappropriate and "pervasive" can arise from the case itself, and require recusal. A judge is not required, however, to refrain from forming an opinion based on the events of the case or prior proceedings involving the same party. *Id.* at 552. To be disqualified, the judge must be laboring under "a deep-seated antagonism that would make fair

judgment impossible." *Atwell v. Schweiker*, 274 Fed. Appx, 116, 117 (3d Cir. 2007) (citing *Liteky*, 510 U.S. at 555).

Dr. Skoorka alleges no facts that would suggest to the reasonable observer that I have some bias or prejudice against him, or that I cannot be impartial. What Dr. Skoorka objects to are my prior rulings granting summary judgment or dismissal of claims in his actions. He misunderstands the standard. "[J]udicial rulings alone almost never constitute a valid basis for bias or partiality" requiring judicial disqualification. *Liteky,* 510 U.S. at 555. The Third Circuit, echoing *Liteky*, has held that "a party's displeasure with legal rulings does not form an adequate basis for recusal." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000)

My prior rulings are contained in publicly filed opinions. For the most part, they measure the allegations or affidavits against the standards governing a motion to dismiss or for summary judgment. If there are any errors, the avenue for correction is an appeal from a final decision.

As I stated in relation to an earlier transfer from the Southern District of New York, "Skoorka has suffered some defeats, both in State and federal court, but those adverse rulings do not reflect on the impartiality of any New Jersey court or jury." *See Skoorka v. Kean Univ.*, No. CIV. 14-4561 KM MAH, 2015 WL 3561610, at *3 (D.N.J. June 5, 2015). Mere disagreement with my rulings does not justify reassignment to another judge or a forum-shopping retransfer to the Eastern District of New York.

The motion to reverse the transfer of venue is therefore denied.

## IV. Current status of the claims

Given the many filings in this and related matters, it is worth pausing to summarize the state of the pending claims.

The claims in the 2009 action have been considered under a summary judgment standard, and only a few have survived. Dr. Skoorka attempted to file identical lawsuits in other forums; they were transferred here. I treated those complaints (to the extent they were not foreclosed by the earlier summary

judgment ruling) as supplemental pleadings updating the earlier allegations with events that occurred subsequently. *Cf.* Fed. R. Civ. P. 15(d). Thus far, those supplemental allegations have been subjected only to a Rule 12(b)(6) analysis; summary judgment motions may follow if and when discovery is complete.

I list the currently active claims together in consolidated fashion:

## Against the Kean Defendants

### Title VII retaliation

*Protected activity*:

Assertion of religious discrimination in unsuccessful 2001 lawsuit, subsequent lawsuits, EEOC filings, internal complaints.

*Adverse retaliatory actions*:

**(i)** Scheduling to conflict with teaching schedule at NYU (2009 action).

**(ii)** Deprivation of office equipment and supplies (2009 action, 2014 action).

**(iii)** Professor interrupted Dr. Skoorka's classes to yell at him (2009 action).

**(iv)** Assignment to nonteaching position (2016 action, 2017 action)

**(v)** Unfounded disciplinary/tenure proceedings (2017 action)

## Against the Union Defendants

Title VII retaliation claim for failing to press grievances on Dr. Skoorka's behalf (2016 action only).

## V.    Conclusion

For the foregoing reasons, defendants' motions to dismiss (DE 29, DE 30) will be granted in part and denied in part. The motion to dismiss is denied as to part of Dr. Skoorka's cause of action for Title VII retaliation as against Kean University, its Board of Trustees, and the State of New Jersey. The motion to dismiss is in all other respects granted as to the remaining claims against the Kean defendants, as well as the claims against the Kean Federation of

Teachers, Council of New Jersey State College Locals, and the American Federation of Teachers.

Dated: March 11, 2019

Kevin McNulty
**United States District Judge**

| Defendants & Claims → | Decision → | Remaining Defendants & Claims |
|---|---|---|
| **2009 ACTION**<br><br>**DEFENDANTS:**<br>Kean University, the State of New Jersey, the Board of Trustees of Kean University, Kean Federation of Teachers, Council of New Jersey State College Locals, American Federation of Teachers, W.M. Kempey, D. Farahi, V. Thompson, A.N. Ntoko, and M.D. Rodriguez.<br><br>**CLAIMS:**<br><br>Title VII disparate treatment or harassment on the basis of religion<br><br>Title VII retaliation<br><br>CEPA retaliation<br><br>NJLAD discrimination/ NJLAD retaliation<br><br>Title VII – failure by Union to press grievances | ***Summary Judgment***<br>*Skoorka v. Kean Univ.*, No. CIV. 09-3428 KM MAH, 2015 WL 3533878 (D.N.J. June 2, 2015). | **REMANDS:**<br>Kean University<br>Board of Trustees of Kean University.<br>State of New Jersey<br><br><br><br>**REMAINING DEFENDANTS:**<br>Kean University<br>Board of Trustees of Kean University.<br>State of New Jersey<br><br><br><br>**REMAINING CLAIMS:**<br>Title VII retaliation.<br><br>*Protected activity:*<br>Complaints of racial/religious discrimination in unsuccessful 2001 lawsuit.<br><br>*Adverse retaliatory actions:*<br>(i) Changing teaching schedule to conflict with teaching at NYU;<br>(ii) Deprivation of office equipment and supplies,<br>(iii) Professor interrupted Dr. Skoorka's classes to yell at him. |

| AMENDED AND SUPPLEMENTAL COMPLAINT/ CONSOLIDATED 2009 AND 2014 ACTION | | |
|---|---|---|
| **DEFENDANTS:** Kean University, the State of New Jersey, the Board of Trustees of Kean University, Kean Federation of Teachers, Council of New Jersey State College Locals, American Federation of Teachers, William M. Kempey, and Dawood Farahi. | | **REMAINING DEFENDANTS:** Kean University Board of Trustees of Kean University. State of New Jersey |
| **CLAIMS:** To the extent not duplicative or already dismissed on summary judgment, the Amended and Supplemental Complaint added factual allegations regarding the deprivation of office supplies and equipment. | *Motion to dismiss* *Skoorka v. Kean Univ.*, No. 09 CV 3428, 2017 WL 2838459 (D.N.J. June 30, 2017) (applying the law of the case doctrine, analyzing NYCHRL claims). | **REMAINING CLAIMS:** Title VII retaliation against Kean defendants. Same as 2009 action, updated to June 27, 2014, with new allegations of deprivation of office equipment and supplies. |
| Title VII discrimination, harassment, and retaliation updated to June 27, 2014. | | |

| | | |
|---|---|---|
| CEPA retaliation, updated to June 27, 2014. | | |
| NLJAD discrimination/retaliation, updated to June 27, 2014. | | |
| New York City Human Rights Law ("NYCHRL") | | |
| **2016 ACTION (originally filed in SDNY)**<br><br>**DEFENDANTS:** Kean University, the State of New Jersey, the Board of Trustees of Kean University, Kean Federation of Teachers, Council of New Jersey State College Locals, American Federation of Teachers, Dawood Farahi, Jeffrey Toney, Suzanna Bousquet, Joy Moskovitz, SCO Kenneth Green, Pamela Mosley Gresham, Sophia Howlett, Faroque Chowdhury, and Charlie Williams | | **REMAINING DEFENDANTS:** Kean University Board of Trustees of Kean University State of New Jersey Kean Federation of Teachers Council of New Jersey State College Locals American Federation of Teachers |

| CLAIMS: | Motion to dismiss | REMAINING CLAIMS: |
|---|---|---|
| This complaint contains some factual allegations that duplicate those already dismissed or disposed of on summary judgment, as well as new allegations. | *Skoorka v. Kean Univ.*, No. 2:16-CV-3842-KM-MAH, 2018 WL 3122331 (D.N.J. June 26, 2018). | **(a)** Title VII retaliation, as against Kean defendants <br><br> *Protected activity:* <br> Filing lawsuits, EEOC charges, etc., that claimed religious discrimination. <br><br> *Adverse retaliatory action:* <br> Transferring Dr. Skoorka from a teaching to nonteaching desk job |
| Title VII discrimination, harassment, asserted against Kean and against Union for failure to represent | | |
| Title VII retaliation for filing lawsuits, EEOC charges, etc., that claimed religious discrimination, asserted against Kean and against Union for failure to represent | | **(b)** Title VII retaliation, as against Union defendants, for failure to press Dr. Skoorka's grievances against Kean |
| CEPA retaliation | | |
| NLJAD discrimination and harassment/NJLAD retaliation | | |
| New York City Human Rights Law ("NYCHRL") claims | | |

| 2017 ACTION (originally filed in EDNY) (This action) | Motion to dismiss Civ. No. 17-5484 filed March 11, 2019 | REMAINING CLAIMS: |
|---|---|---|
| **DEFENDANTS:**<br>Kean University, the State of New Jersey, the Board of Trustees of Kean University, Kean Federation of Teachers, Council of New Jersey State College Locals, American Federation of Teachers<br><br>**CLAIMS:**<br>Deemed to update prior claims or assert new claims for period Sept. 2015–July 2016<br><br>Title VII harassment, religious discrimination<br><br>Title VII retaliation (Alleged retaliatory acts relate to teaching duties, interference with NYU schedule, unfounded disciplinary actions, scheduling on religious holidays, failure to promote, plus Union's failure to press grievances.) | | Title VII retaliation, as against Kean defendants only<br><br>*Protected activity:*<br>Filing lawsuits, EEOC charges, etc., that claimed religious discrimination.<br><br>*Adverse retaliatory actions:*<br>(i) Confining Dr. Skoorka to nonteaching desk job<br>(ii) Unfounded disciplinary proceedings |